Filed 12/4/25  In re D.M. CA4/2
Opinion following transfer from Supreme Court

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re D.M., a Minor Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E082401 |
| Plaintiff and Respondent, | (Super.Ct.No. RIJ2000775) |
| v. | OPINION |
| DAISY M., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Mona M. Nemat, Judge.
Conditionally reversed.

Mansi Thakkar, under appointment by the Court of Appeal, for Defendant and
Appellant.

Minh C. Tran, County Counsel and Teresa K.B. Beecham and Catherine E. Rupp,
Deputy County Counsel, for Plaintiff and Respondent.

1

Daisy M. (Mother) appeals from the juvenile court's order terminating her parental rights to her daughter, D.M. The only argument that Mother raises is that the Riverside County Department of Public Social Services (DPSS) conducted an inadequate investigation under state law implementing the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq. (ICWA)). In particular, Mother argues that DPSS failed to comply with the expanded duty of initial inquiry under Welfare and Institutions Code section 224.2, subdivision (b) (§ 224.2(b)). (Unlabeled statutory citations refer to the Welfare and Institutions Code.) We filed an opinion affirming on the ground that the duty did not apply, because D.M. was taken into custody pursuant to a protective custody warrant under section 340.

The Supreme Court granted review and subsequently transferred the case back to this court with directions to vacate our prior opinion and reconsider the appeal in light of *In re Ja.O.* (2025) 18 Cal.5th 271 (*Ja.O.*). Having complied with the Supreme Court's directions and received supplemental briefs from the parties, we conditionally reverse.

BACKGROUND

In November 2020, DPSS received a referral alleging general neglect of D.M. by Mother. The referral arose from a domestic violence incident between Mother and her boyfriend. The boyfriend told law enforcement that Mother threatened him with a pedicure tool and that Mother smoked methamphetamine in front of D.M. Mother agreed

to keep D.M. away from her boyfriend and to submit to an on-demand urine test. Mother denied having any Indian ancestry.[1]

The social worker later spoke with a maternal aunt and maternal grandmother. Both denied being aware of any domestic violence between Mother and her boyfriend. Maternal grandmother told the social worker that she did not have any Indian ancestry.

The social worker tried to reach D.M.'s father but later learned from paternal grandfather that he was in jail for violating a restraining order protecting paternal grandmother. Paternal grandfather denied having any Indian ancestry. Paternal grandfather expressed concern that father and Mother were abusing drugs and were incapable of parenting D.M. Paternal grandmother also denied having Indian ancestry. When DPSS reached father, he confirmed that he did not have any Indian ancestry.

In December 2020, DPSS filed a petition under section 300 as to D.M. As subsequently amended, the petition alleged that Mother engages in domestic violence in D.M.'s presence, that both parents have a history of substance abuse, that father fails to provide for D.M., that father has a criminal history including discharge of a firearm, robbery, and gang activity, and that Mother has pending criminal charges including battery and driving under the influence. DPSS attached an Indian Child Inquiry form (ICWA-010(A)) to the original petition, indicating that DPSS asked the parents, maternal grandmother, and paternal grandfather whether D.M. may be an Indian child. DPSS

---

[1] Because ICWA uses the term "Indian," we use it as well "to reflect the statutory language." (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1125, fn. 1 (*Dezi C.*).) No disrespect is intended.

reported that as a result of its inquiry, it had no reason to believe that D.M. was an Indian child.

The juvenile court initially detained D.M. from father but released her to Mother. The court found that DPSS had conducted a sufficient ICWA inquiry and that ICWA did not apply. The court ordered Mother to file a Parental Notification of Indian Status form (ICWA-020), which she did. Mother denied that she had any Indian ancestry. When asked by the social worker later that month, both Mother and father denied Indian ancestry.

In March 2021, the juvenile court found that father was D.M.'s presumed father. Father filed an ICWA-020, indicating that he was unaware of any Indian ancestry.

Later that month, Mother was arrested for battery and driving under the influence. DPSS obtained a protective custody warrant, took D.M. into protective custody, and asked the court to detain D.M. from Mother. The court then detained D.M. from Mother and again found that ICWA did not apply.

At the contested jurisdiction and disposition hearing in May 2021, the court sustained the amended petition, removed D.M. from the custody of both parents, and ordered reunification services for both parents. The court also found that DPSS had conducted a sufficient inquiry and that ICWA did not apply.

At the six-month and 12-month review hearings, the court continued reunification services for both parents. Mother continued to deny Indian ancestry, and the court found that DPSS had made a sufficient ICWA inquiry, that ICWA did not apply to D.M., and that there was no new information to the contrary.

4

At the contested 18-month review hearing in September 2022, the court terminated reunification services for both parents and set a selection and implementation hearing under section 366.26. Father was incarcerated for much of the reunification period and made little progress in services. Mother participated in some services but frequently missed drug tests, tested positive in April 2022, and refused to test thereafter.

In the report for the section 366.26 hearing, father again denied having any Indian ancestry. When the selection and implementation hearing was conducted in October 2023, the court again found that ICWA did not apply, and the court terminated parental rights.

DISCUSSION

Mother argues that the juvenile court erred by not requiring DPSS to conduct an adequate initial inquiry to determine whether D.M. is an Indian child within the meaning of ICWA, because DPSS did not ask various extended family members whether they had any Indian ancestry. We agree.

To be an Indian child within the meaning of ICWA, a child must be either (1) a member or citizen of a federally recognized Indian tribe, or (2) eligible for membership or citizenship in such a tribe and the biological child of a member or citizen. (25 U.S.C. § 1903(4), (8); § 224.1, subds. (a)(4), (b)(1); *In re Jonathon S.* (2005) 129 Cal.App.4th 334, 338.) The child welfare department and the juvenile court have an "affirmative and continuing duty to inquire" whether a child in a dependency proceeding "is or may be an

5

Indian child." (§ 224.2, subd. (a).)[2] "The duty to inquire consists of two phases—the duty of initial inquiry and the duty of further inquiry." (*In re Ricky R.* (2022) 82 Cal.App.5th 671, 678 (*Ricky R.*), disapproved on another ground by *Dezi C.*, *supra*, 16 Cal.5th at p. 1152, fn. 18.)

"The duty of initial inquiry applies in every dependency proceeding." (*Ricky R.*, *supra*, 82 Cal.App.5th at p. 678.) The child welfare department's duty to inquire begins "when first contacted regarding a child." (§ 224.2, subd. (b)(1).) The department must ask the "party reporting child abuse or neglect whether the party has any information that the child may be an Indian child," and the department must also ask the child and the child's family members, including extended family members, upon first contact with those individuals. (*Ibid.*) In addition, if the child is taken into the department's temporary custody under section 306, "or if they were initially taken into protective custody pursuant to a warrant described in Section 340," then the department must ask "the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child." (§ 224.2, subd. (b)(2).) Extended family members include adults who are the child's stepparents, grandparents, siblings, brothers-

---

[2] After we filed our previous opinion in this case, the Legislature enacted Assembly Bill No. 81 (2023-2024 Reg. Sess.) (Assembly Bill 81), which amended section 224.2 effective September 27, 2024. (Stats. 2024, ch. 656, § 3.) We quote that version of the statute because, for purposes of this case, it is not materially distinguishable from prior law as interpreted by *Ja.O.*

or sisters-in-law, aunts, uncles, nieces, nephews, and first or second cousins. (§ 224.1, subd. (c)(1).)

Juvenile courts must conduct their own initial inquiry as well. "Federal regulations require state courts to ask each participant 'at the commencement' of a child custody proceeding 'whether the participant knows or has reason to know that the child is an Indian child.'" (*Ricky R.*, *supra*, 82 Cal.App.5th at pp. 678-679, quoting 25 C.F.R. § 23.107(a) (2022).) Similarly, state law requires the court to pursue an ICWA inquiry at the first hearing on a dependency petition (or at the first court appearance of a party or "other interested person[]," if the party or other interested person was not present at the first hearing). (§ 224.2, subd. (c).)

"'[R]eason to believe that an Indian child is involved' triggers the duty of further inquiry. [Citation.] '[R]eason to believe' exists whenever the court or [the child welfare department] has 'information suggesting that either the parent of the child or the child is a member [or citizen,] or may be eligible for membership [or citizenship,] in an Indian tribe.'" (*Ricky R.*, *supra*, 82 Cal.App.5th at p. 679, quoting § 224.2, subd. (e), 1st par. & (e)(1).)

The juvenile court may find that ICWA does not apply to the proceedings if it finds "that an agency's inquiry and due diligence were 'proper and adequate,' and the resulting record provided no reason to know the child is an Indian child." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1134.) The "court's fact-specific determination that an inquiry is adequate, proper, and duly diligent is 'a quintessentially discretionary function' [citation] subject to a deferential standard of review." (*Id*. at p. 1141.) "'"On a well-developed

7

record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case. However, the less developed the record, the more limited that discretion necessarily becomes.'" [Citations.] [¶] If, upon review, a juvenile court's findings that an inquiry was adequate and proper and ICWA does not apply are found to be supported by sufficient evidence and record documentation as required by California law [citation], there is no error and conditional reversal would not be warranted even if the agency did not inquire of everyone who has an interest in the child. On the other hand, if the inquiry is inadequate, conditional reversal [of an order terminating parental rights] is required so the agency can cure the error and thereby safeguard the rights of tribes, parents, and the child." (*Ibid*.)

DPSS failed to inquire of several extended family members who were reasonably available in this case. The agency had contact information for maternal aunts Lupita, Jennifer, Kimberly, and Maria and paternal aunts Laura and Sandy. But there is no evidence that DPSS asked those relatives about possible Indian ancestry. The agency erred by failing to discharge its duty of initial inquiry with respect to those extended family members. Mother contends that DPSS also erred by failing to ask maternal aunt Rosa about possible Indian ancestry, but we find no error with respect to her because the record reflects that she is a maternal great-aunt. She does not qualify as an extended family member under the statutory definition. (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1053 [agency did not have a duty to inquire of great-grandparents because they were not extended family members under ICWA].)

8

For these reasons, there is insufficient evidence to support the court's implied finding that DPSS conducted an adequate and proper ICWA inquiry. We therefore conditionally reverse the order terminating parental rights and remand for DPSS to conduct a proper inquiry. (*Dezi C.*, *supra*, 16 Cal.5th at p. 1141.)

## DISPOSITION

The order terminating parental rights is conditionally reversed. On remand, the juvenile court shall order DPSS to comply with its duty of initial inquiry under subdivision (b) of section 224.2 and, if applicable, the duty of further inquiry (§ 224.2, subd. (e)) and the duty to provide notice to the proper tribes (25 U.S.C. § 1912(a); § 224.3). The court shall also order DPSS to comply with the documentation requirements of rule 5.481(a)(5) of the California Rules of Court. If the court determines that DPSS has complied and that ICWA does not apply, then the court shall reinstate the order terminating parental rights. If the court determines that ICWA applies, then it shall proceed in conformity with ICWA and related California law.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ
J.

We concur:

MILLER
Acting P. J.

RAPHAEL
J.

9